IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02217-CMA-MJW

REBECCA HENKEL,

Plaintiff,

v.

ALBERTSONS, LLC, a limited liability corporation formed pursuant to the laws of Delaware,

Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESS ANNE STODOLA (Docket No. 39), and**

**ORDER DENYING AS MOOT DEFENDANT'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE A REPLY (Docket No. 45)**

**Michael J. Watanabe**
**United States Magistrate Judge**

This is a slip-and-fall case. Defendant moved to "strike" Plaintiff's expert report under Federal Rule of Evidence 702. (Docket No. 39.) District Judge Christine M. Arguello referred the motion to the undersigned. (Docket No. 40.) The Court has reviewed the parties' filings (Docket Nos. 39 & 44), taken judicial notice of the Court's entire file in this case, and considered the applicable Federal Rules of Evidence and case law. Now being fully informed, the Court grants Defendant's motion.

## Legal Standards

As recently stated by Judge Arguello:

> Under *Daubert,* the trial court acts as a "gatekeeper" of proffered expert testimony by reviewing that testimony for relevance pursuant to F.R.E. 401 and reliability pursuant to F.R.E. 702. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589–95 (1993); *see also United States v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009) ("the district court

must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony."). The "gatekeeping" requirement set forth in *Daubert* "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999). The proponent of a challenged expert must demonstrate by a preponderance of the evidence that the expert's testimony and opinion is admissible. [*Nacchio,* 555 F.3d at 1241]; F.R.E. 702 advisory comm. notes.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that a witness who is qualified as an expert by "knowledge, skill, experience, training, or education" may testify if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

*Camara v. Matheson Trucking, Inc.*, No. 12-cv-03040-CMA-CBS, 2015 WL 161271, at *2 (D. Colo. Jan. 13, 2015).

### Anne Stodola's Expert Report

Anne Stodola's expert report runs six pages. The first three-and-a-half pages recite the facts of the case as gleaned from a site visit, a surveillance video of Plaintiff's fall, and witness statements. On page four, Stodola sets out Defendant's company policy on spills, and concludes that Defendant's response to inclement weather on the day of Plaintiff's fall—specifically, using dry mops—was not effective because shoppers continued to appear to slip and slide entering the store.

From there, Stodola concludes that rubber mats should have been placed next to the door. On page 5, she explains that placing mats at building entrances during inclement weather is recommended by an industry-safety group. She then notes that Defendant placed mats on one side of the door, but not the other—a response she deems inadequate in light of the industry-safety group's standards.

Finally, to conclude her report, Stodola opines that Plaintiff would have had no way of expecting a slippery floor and that human beings—when walking into unexpectedly slippery conditions—often fall down.

## Discussion

Defendant argues that the Stodola's opinions are inadmissible because (1) they "are not based on any identifiable, demonstrably reliable scientific principle or method" and Stodola "conducted no testing to confirm her opinions"; and (2) "Stodola merely presents observable phenomena that any lay person could readily discern." (Docket No. 39, p.3.) Defendant's motion fails to cite the Federal Rules of Evidence at any point, but it appears that the first argument appears is brought under both Rule 702(b) and Rule 702(c), while the second argument is plainly brought under Rule 702(a).

**I.  Reliable Methods, Based on Sufficient Facts & Data**

Defendant's first argument appears to be made under both Rule 702(b) and 702(c). As to Rule 702(b), Judge Arguello has said:

> The plain language of Rule 702 requires an expert to base his or her opinion on sufficient facts or data. Even if an expert presents impeccable credentials, he or she cannot speculate or jump to an opinion without factual support. A party's failure to support expert opinion with sufficient

> facts and data requires exclusion of the unsupported evidence. Thus, admissible expert opinion requires a foundation based on facts that allow the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation. However, absolute certainty is not required.
>
> When reviewing the basis for an expert's opinion, courts in this circuit should focus on the quantitative sufficiency of the facts behind the opinion, not the quality.

*James River Ins. Co. v. Rapid Funding, LLC*, No. 07-cv-01146-CMA-BNB, 2009 WL 481688, at *7–8 (D. Colo. Feb. 24, 2009) (internal citations, ellipses, and quotation marks omitted), *reversed on other grounds*, 658 F.3d 1207 (10th Cir. 2011).

As to Rule 702(c), Chief Judge Krieger has explained that the analysis under a motion to exclude as a two-step process: determining "(i) what methodology did the witness use to reach the opinion; and (ii) is that methodology generally deemed "reliable" in the field in which the expert works. Both inquiries are entirely factual in nature, and the proponent of the opinion must establish both inquiries by sufficient, competent evidence." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1222-23 (D. Colo. 2008). In determining the reliability of the methodology, Judge Arguello looks to the "the non-exhaustive list of factors set forth by Justice Blackmun," specifically:

> (1) whether the method is susceptible to testing and has been subject to such testing;
>
> (2) whether the method has been subjected to peer review;
>
> (3) whether there is a known or potential error rate associated with the methodology used; and
>
> (4) whether the relevant community of experts has accepted the expert's theory."

5

*James River Ins. Co.*, 2009 WL 481688, at *10 (citing *Daubert,* 509 U.S. at 593–94).

Here, Stodola is remarkably circumspect in explaining her methodology. She cites to Defendant's own safety rules for handling floor spills; she cites to an industry standard from the American Society for Testing and Materials[1] explaining generally that mats and runners should be laid down during inclement weather; and she provides the following paragraph:

> The safety hierarchy, which is a safety principle taught to engineers and applicable to a wide range of industries including grocery stores, states that hazards should be designed out if possible, guarded against if they cannot be designed out, and if they cannot be designed out or guarded against, warnings must be given. The latter is the least effective. Applying those principles, a walk-off mat should have been placed next to the door.

(Docket No. 39-1, p.4.)

Stodola's report is based on video of Plaintiff's fall; an in-person visit to the site; testimony from eye-witnesses; and Stodola's own expertise. Stodola did no actual testing of the floor's slipperiness.[2] That said, scientific testing is not required in every

---

[1] According to their website, "ASTM International, formerly known as the American Society for Testing and Materials (ASTM), is a globally recognized leader in the development and delivery of international voluntary consensus standards. Today, some 12,000 ASTM standards are used around the world to improve product quality, enhance safety, facilitate market access and trade, and build consumer confidence." ASTM International, *Overview*, http://www.astm.org/ABOUT/full_overview.html (June 10, 2015).

[2] The Court notes that such testing *can* be done. Although the issue ended up moot in the case, Judge Martinez recently described a slip-and-fall expert report as follows:

> Jim Royston of Western Engineering and Research Corporation, who was hired by Plaintiffs' counsel as an expert in fall accidents, performed an investigation and various tests regarding the site of Mr.

6

case. *Hatfield v. Wal-Mart Stores, Inc.*, 335 F. App'x 796, 800 (10th Cir. 2009). "Rather, the inquiry examines only whether the witness obtained the amount of data that the methodology itself demands." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1223 (D. Colo. 2008).

It is difficult to see what amount of data would be sufficient, however, because Stodola never identifies her methodology. Nowhere in her report does Stodola mention any actual analysis being applied, other than a cursory explanation of the "safety hierarchy." She provides no explanation as to when walk-off mats should be applied, when they shouldn't, what alternative methods might be acceptable, and how she determines when such considerations do or do not apply. Ultimately, she provides no guidance as to what differentiates this case from other cases where a different conclusion might be appropriate.

Stodola has not sought to offer an expert opinion on industry standards (*i.e.*, "based on my expertise in the retail industry, mats are always placed out in inclement weather"); she has purported to offer an expert opinion on engineering principles and accident reconstruction, without meaningfully explaining or applying a methodology

---

    Carriker's accident. Mr. Royston testified that the Americans with Disabilities Act ("ADA") recommended a slip-resistance coefficient of 0.60 for a dry floor, but that a floor could be characterized as slip-resistant if its coefficient was greater than 0.5. Mr. Royston testified that there was no building code requirement to perform slip testing of a wet floor. According to Mr. Royston's slip tests, the floor of the restroom at DIA where Mr. Carriker's accident took place had an average slip-resistance coefficient of 0.56 when dry, and 0.11 when wet.

*Carriker v. City & Cnty. of Denver, Colorado*, No. 12-cv-02365-WJM-KLM, 2014 WL 5394985, at *1 (D. Colo. Oct. 23, 2014) (citations to the record omitted).

7

derived from either field. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* Here, there is too great an analytical gap—indeed, a gap larger than the analysis itself—connecting those facts to the opinions proffered. Stodola's opinions are therefore inadmissible.

## II.     Helpful to the Trier of Fact

Defendant also argues under Rule 702(a), asserting that the subject-matter opined upon is not appropriate for expert testimony. Whether testimony is a proper subject for expert opinion is a question of common sense—*i.e.,* whether an average juror is "qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fed. R. Evid. 702 advisory committee's note; *see also Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1156 (10th Cir. 2013) (expert testimony not needed in trademark confusion case turning on the similarity or dissimilarity of two marks, because it was "a matter easily evaluated by laymen within the realm of their common knowledge and experience").

While expert testimony certainly could be offered in a slip-and-fall case as to specialized and technical questions, *see, e.g.*, *Carriker v. City & Cnty. of Denver, Colorado*, No. 12-cv-02365-WJM-KLM, 2014 WL 5394985, at *1 (D. Colo. Oct. 23, 2014)

8

(describing expert opinion based on measurable coefficient of friction on dry tile versus wet tile of the type at issue), Stodola has not purported to offer such specialized testimony. She offers her expert opinion that a rubber mat should be placed in a retail store's doorway during inclement weather and that people, when walking, will fall when the floor is unexpectedly slippery. These are not matters outside the realm of experience of lay jurors. Accordingly, the Court concludes that Stodola's opinions are not helpful to the trier of fact and are thus inadmissible under Rule 702(a).

### III.     Miscellaneous Issues

Defendant classifies Stodola's opinions in three categories: opinions as to the weather, opinions as to safety guidelines, and opinions as to the expectations Plaintiff would have had walking into the store. The foregoing discussion focused on the second category. As to the weather, Stodola does not purport to offer an opinion on the weather; she simply recounts the weather as part of the facts she relied upon, and the admissibility of such data is moot in light of the Court's order striking the rest of Stodola's testimony. As to Plaintiff's expectations, the testimony is plainly outside any expertise of Stodola's and is thus inadmissible.

### Order

For the above reasons, it is hereby ORDERED that

- Defendant, Albertson's LLC's Motion to Strike Plaintiff's Expert Witness Anne Stodola **(Docket No. 39)** is **GRANTED**;
- Anne Stodola's testimony is EXCLUDED from trial; and

9

- Defendant's Motion for Extension of Time to File a Reply **(Docket No. 45)** is **DENIED AS MOOT**.

Dated:     June 11, 2015               */s/ Michael J. Watanabe*
           Denver, Colorado            Michael J. Watanabe
                                       United States Magistrate Judge