IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02217-CMA-MJW

REBECCA HENKEL,

Plaintiff,

v.

ALBERTSONS, LLC, a limited liability corporation formed pursuant to the laws of Delaware,

Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE REGARDING TESTIMONY OF DEFENDANT'S EXPERT WITNESS, DR. ERIK KREUTZER (Docket No. 48)**

**Michael J. Watanabe**
**United States Magistrate Judge**

This is a slip-and-fall case. District Judge Christine M. Arguello referred to the undersigned Plaintiff's motion to exclude portions of the proposed testimony of Defendant's expert witness. (Docket Nos. 48 & 49.) The Court has reviewed the parties' filings (Docket Nos. 48, 56, & 58), taken judicial notice of the Court's entire file in this case, and considered the applicable Federal Rules of Evidence and case law. Now being fully informed, the Court grants Defendant's motion.

**Legal Standards**

As recently stated by Judge Arguello:

> Under *Daubert,* the trial court acts as a "gatekeeper" of proffered expert testimony by reviewing that testimony for relevance pursuant to F.R.E. 401 and reliability pursuant to F.R.E. 702. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589–95 (1993); *see also United States v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009) ("the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony."). The "gatekeeping" requirement set forth in

*Daubert* "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999). The proponent of a challenged expert must demonstrate by a preponderance of the evidence that the expert's testimony and opinion is admissible. [*Nacchio,* 555 F.3d at 1241]; F.R.E. 702 advisory comm. notes.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that a witness who is qualified as an expert by "knowledge, skill, experience, training, or education" may testify if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

*Camara v. Matheson Trucking, Inc.*, No. 12-cv-03040-CMA-CBS, 2015 WL 161271, at *2 (D. Colo. Jan. 13, 2015).

### Dr. Erik Kreutzer's Expert Report

Dr. Erik Kreutzer's expert report totals twelve paragraphs:

- Paragraph 1 briefly summarizes Dr. Kreutzer's qualifications.

- Paragraph 2 briefly summarizes Plaintiff's injury and the medical records reviewed by Dr. Kreutzer.

- Paragraph 3 (including lettered list of subparagraphs *a* through *c*) and Paragraph 4 set forth Dr. Kreutzer's opinion as to the most common injuries or conditions from a head trauma like Plaintiff's.

- Paragraphs 5 through 7 opine that "Rotary Chair" testing, upon which Plaintiff's treatment diagnosis was based, "has been by and large abandoned" because its data "often yield 'false positives'"—and, further, that Plaintiff's tests are

unreliable because two of her medications can cause false positives.

- Paragraph 8 summarizes the results of a neuropsychological evaluation of Plaintiff by Dr. Eric Ecklund-Johnson, including Dr. Ecklund-Johnson observation that Plaintiff might be "over-reporting" her symptoms.

- Paragraph 9 notes that Plaintiff's weight might cause sleep apnea, but that no sleep study has been performed; Dr. Kreutzer specifically opines that, in his opinion, "it is far more likely that [Plaintiff's] symptoms are related to untreated sleep apnea, than to any residual central nervous system injury from her accident."

- Paragraphs 10 and 11 describe academic literature suggesting that, among patients with subjective but objectively unverified complaints, those who are involved in litigation have "elevated" complaints compared to those who are not.

- Finally, Paragraph 12 offers Kreutzer's ultimate opinions:

    In my opinion, there is no valid medical finding or data that supports that Ms. Henkel's claims of disability or injury related to her mild head injury of March 2013. After thousands upon thousands of dollars worth of medical testing, imaging and consultation, only a minor finding on the rotary chair examination was reported, and this finding can be explained based on medication Ms. Henkel used on a regular basis. The rotary chair test was not diagnostic of serious brain trauma. Ms. Henkel's Neuropsychological Testing suggested she may be "over-reporting" her somatic symptoms, and, if anything, found that her neurocognitive function was intact and strong. Lastly, the fact of ongoing litigation has been repeated shown [sic] in study after study to "influence" how an individual might over-report symptoms compared to patients after head injury who are not involved in a lawsuit.

(Docket No. 48-1.)

## Discussion

Plaintiff does not object to the portions of Dr. Kreutzer's report discussing the rotary chair test, possible causes of false positives, or sleep apnea. Rather, Plaintiff objects to (1) the portion of Dr. Kreutzer's report discussing Dr. Ecklund-Johnson's

neuropsychological evaluation, and (2) the portions of Dr. Kreutzer's report discussing the effects of financial motive on self-reported symptoms.

Both Plaintiff and Defendant refer to these portions of Dr. Kreutzer's report as his "opinions." Specifically, the parties refer to Dr. Kreutzer's "opinion" (based on Dr. Ecklund-Johnson's neuropsychological evaluation) that Plaintiff is embellishing her symptoms, and his "opinion" (based on the litigation-motive literature) that Plaintiff's embellishments are motivated by financial gain. But, as discussed below, it is difficult to see where Dr. Kreutzer offers an opinion on either topic.

<u>*Opinion that Plaintiff Is Embellishing Her Symptoms*</u>

As to the discussion of Dr. Ecklund-Johnson's neuropsychological evaluation, Dr. Kreutzer does little more than summarize the results of the evaluation. Dr. Kreutzer's discussion, in full, reads:

> The Neuropsychological Evaluation of 3/13/14 performed by Eric Ecklund-Johnson PhD at the University of Kansas Hospital also disclosed some conflicting information regarding the claims of disability by Ms. Henkel. It is obvious from Dr. Ecklund-Johnson's evaluation that many of Ms. Henkel's subjective complaints of disability have no discernible objective support. In summary, he concludes that "there was no indication of suboptimal effort/task engagement from any of the performance validity indicators that were examined" and that there were "no indication of significant deficits from tasks that are relied upon to assess executive function." In addition, Dr. Ecklund-Johnson cautions us that the validity of Ms. Henkel's subjective responses must be questioned due to possible "over-reporting of somatic and cognitive complaints." He notes that most individuals, in his experience, suffering from concussion will recover well cognitively over weeks to months. He summarizes by saying the results were noteworthy for "evidence of relatively strong performance on some tasks that are typically sensitive to acquired brain injury." He implies that other factors (emotional, psychological) might be active in creating Ms. Henkel's complaints.

5

(Docket No. 48-1, p.2.)   Except for the second sentence, nothing in this paragraph could be called Dr. Kreutzer's expert opinion—and even the second sentence is debatable. Rather, this discussion contains only Dr. Kreutzer's summary of a specific medical record. Nor is there any expert opinion offered on this matter in Dr. Kreutzer's closing paragraph, which states, simply: "Ms. Henkel's Neuropsychological Testing suggested she may be "over-reporting" her somatic symptoms . . . .   (Docket No. 48-1, p.3.)   Again, that would appear to be a simple summary of what was said in Dr. Ecklund-Johnson's evaluation, not Dr. Kreutzer's own medical opinion.

At no point in Dr. Kreutzer's report does he express his own opinion that Plaintiff is embellishing or exaggerating her symptoms, nor does he in any other way incorporate Dr. Ecklund-Johnson's evaluation into his own independent medical judgment.   Rather, he offers his medical judgments about Plaintiff's testing—then states, too, that Dr. Ecklund-Johnson thinks Plaintiff might be over-stating her symptoms.   Dr. Kreutzer never states as his own opinion that Plaintiff is embellishing; he doesn't even say that his opinion is supported by Dr. Ecklund-Johnson's conclusions.   The discussion of Dr. Ecklund-Johnson's evaluation is simply appended to the report, without any explanation as to its relevance to Dr. Kreutzer's medical opinion.

Accordingly, the Court finds that Defendant's expert disclosures do not include any proposed testimony from Dr. Kreutzer that Plaintiff is embellishing or overstating her symptoms.   The Court therefore orders that Dr. Kreutzer is precluded from offering such testimony, due to Defendant's failure to make a timely disclosure under Rule 26(b).

Further, since Dr. Kreutzer did not rely on the evaluation for any opinion that he actually purports to offer, the evaluation has little to no probative value as part of the basis for Dr. Kreutzer's opinion.   The Court finds that this probative value does not substantially outweigh the evaluation's prejudicial effect, and the Court therefore orders that Defendant is precluded from disclosing Dr. Ecklund-Johnson's evaluation to the jury as part of the basis for Dr. Kreutzer's opinion.[1]   See Fed. R. Evid. 703.

### Opinion that Plaintiff Is Motivated by Financial Gain

Similarly, the parties dispute whether Dr. Kreutzer should be allowed to testify that Plaintiff's claims are motivated by financial gain—*i.e.*, by this litigation.   But at no point does Dr. Kreutzer purport, in his report, to offer such an opinion.

Rather, Dr. Kreutzer states, in full:

> Last, but of course not least, are the well documented relationships between persistent vague symptoms following head injury and the potential of financial gain from litigation.   Ms. Henkel's case is no different than scores of others I have reviewed following head or ear injuries in which myriad claims of symptoms are made followed by extensive objective testing, none of which substantiate the subjective claims.   Claims of dizziness, sleepiness, lack of focus, memory disturbance, headache and emotional disturbance are often made after closed head injury.   While these claims are difficult to refute, it is rare that they can be supported or documented on truly objective studies and testing.
>
> From the summary of an article "Psychological Injury and the Law" Dec. 2014, Vol 7, Issue 4, P.388-96, the authors summarize that "Prior studies have frequently noted elevated symptom endorsement among traumatic brain injury (TBI) litigants compared to nonlitigants with TBI, with little examination of potential litigation-related stressors."   A similar study by Binder, L. M. and M. L. Rohling (1996).   "Money matters: a meta-analytic review of the effects of financial incentives on recovery after closed-head

---

[1] This order has no impact on whether Dr. Ecklund-Johnson's evaluation may be independently admissible.

>
> injury [see comments]." American Journal of Psychiatry 153(1):7-10, demonstrates that care must be taken when considering subjective complaints of litigants in such a circumstance. The medical and psychiatric literature are flooded with similar studies of the relationship between persistent symptoms from head injury and ongoing litigation. An important and unique study by Paniak, C., S. Reynolds, et al. (2002). "A longitudinal study of the relationship between financial compensation and symptoms after treated mild traumatic brain injury." J. Clin Exp. Neuropsychol 24(2):187-193, showed that there is a strong and predictable relationship between the reporting of persistent symptoms in post-head injury patients and the presence of on-going litigation. It is clear that Ms. Henkel's claims are typical of the cases reviewed in these scholarly articles, and must be viewed skeptically.

(Docket No. 48-1, pp.2–3.) In his concluding paragraph, Dr. Kreutzer comes back to this topic and states: "Lastly, the fact of ongoing litigation has been repeated shown [sic] in study after study to 'influence' how an individual might over-report symptoms compared to patients after head injury who are not involved in a lawsuit." (*Id.*)

In these paragraphs, it is possible to locate perhaps two opinions: (1) that Plaintiff's claims are no different from "scores of others" Dr. Kreutzer has seen that were not objectively verifiable, and (2) that, because of their unverified nature and because Plaintiff is in litigation, Plaintiff's claims should be viewed skeptically. While the implication is clear, at no point does Dr. Kreutzer actually opine that Plaintiff is lying for the purpose of improving her financial recovery from Defendant.

Thus, as above, the relief Plaintiff asks for in this motion can be granted for failure to make a timely disclosure under Rule 26(b). Dr. Kreutzer is hereby precluded from testifying that Plaintiff's claims are motivated by financial gain. Moreover, Dr. Kreutzer again fails to provide any connection between this discussion and his medical opinion; once again, he simply appends this discussion to his report, without so much as stating

8

that it supports his earlier conclusion about the reliability of Plaintiff's diagnosis. Without any indication that he relied on this material for his medical opinion, the material has little to no probative value. Defendant is further precluded from disclosing to the jury the literature regarding financial motivation in head-injury symptoms. *See* Fed. R. Evid. 703.

## **Order**

It is hereby ORDERED that Plaintiff's Motion in Limine Regarding Testimony of Defendant's Expert Witness, Dr. Eric Kreutzer (Docket No. 48) is GRANTED as follows:

- Dr. Eric Kreutzer may not testify to opinions not disclosed in his expert report under Fed. R. Civ. Pro. 26(b), and specifically may not offer opinions (1) on whether Plaintiff is embellishing or overstating her symptoms, or (2) on whether Plaintiff is motivated by financial gain; and

- Neither Dr. Ecklund-Johnson's evaluation nor the academic literature on litigation motivation cited in Dr. Kreutzer's report may be disclosed to the jury under Fed. R. Evid. 703 as part of the bases for Dr. Kreutzer's testimony (though this Order does not preclude such evidence from being offered through other means, such as through other witnesses or through stipulated exhibits).

Dated:   July 28, 2015             */s/ Michael J. Watanabe*
         Denver, Colorado          Michael J. Watanabe
                                   United States Magistrate Judge